Case number 10-2068, Pamela Mallory v. Bank of America Okay, I think council are aware of the 15 minutes for each side and the appellant can reserve a portion of that. We do ask questions so, you know, we'll keep track of the time, we'll let you know when it's over but it may extend beyond those 15 minutes because as the cases get more interesting, we want to give you more time because we have more questions. But on behalf of the appellant. Thank you, Your Honor. Mark Wilson on behalf of the appellant, Bank of America. May it please the court. Plaintiff below, Pamela Henry, was the victim of a theft. She sued three groups of defendants to get her money back. Jeff Olson and his collection agency under the theory that Olson stole the money. Harvey Waller and his law firm under the theory that Mr. Waller's professional negligence allowed Olson to steal the money. And the third category of defendant was LaSalle Bank, now Bank of America, under the theory that the bank had committed a statutory conversion under the Uniform Commercial Code by accepting these two checks for deposit. After extensive litigation, the court entered summary judgment for the bank and against Pamela Henry, holding that the bank did nothing wrong. Let me ask you regarding the summary judgment for the bank. Was that based on clear law that said the bank did nothing wrong or was it based on information that was developed during the course of discovery? Well, there was a ruling under the law and based on some facts developed in the case. What were the facts that made a difference for the summary judgment motion? Because it seems to me that Bank of America could have filed that summary judgment motion virtually at the start of the case because there's nothing there to expose it to liability. Well, the issue that was ultimately served as the basis for summary judgment, the legal issue, that was first raised in 2001. This case has consumed more than half of my career, Your Honor. That issue was first raised in a motion to dismiss and Judge Henry denied the motion and said that there was a question of fact related to that legal issue. And so we had discovery on the bank's standard of care. We had discovery on the underlying facts of what happened that pertained to the transactions in the account. So could it have been filed earlier? Perhaps. But you had the ruling from the circuit court that there was a question of fact embedded and therefore it had to go forward. Exactly. Now, after the bank prevailed in summary judgment, we sought the attorney's fees and the circuit held essentially that there was no claim against Harvey Waller for the fees because Pamela Henry's claim against the bank was meritless and because someone other than Mr. Waller, Mr. Olson, or someone else, it's not in the record, but someone else caused the loss. And in the circuit court's words, the circuit court said, there was a subsequent conversion by one lawfully and temporary possession of funds that triggered the cause of action herein, not its negotiation through the account. So this ruling was wrong for three grounds, three independent grounds. Let me address those separately. First, a quick comment on the standard of review because an issue was raised about that in the Capolese brief. The first two issues in this appeal are contract construction and statutory construction. Those are issues that are addressed de novo and they are not abuse of discretion. We agree that the latter issue on evidence is an abuse of discretion standard of review. Now, the first reason the court should reverse is that the court misconstrued the contract. The trial court held that this indemnity language in this contract is triggered only when the plaintiff lost money by virtue of the negotiation of checks through the bank account. That was the whole. In other words, how did he arrive at that conclusion? Because it seems reasonable that before liability, before the account holder should have to account for the attorney fees expended by the bank, the account holder should be found to have done something wrong. Your Honor, the problem with that approach to indemnity is that it imposes a legal rule as to when indemnity is permitted and when indemnity isn't permitted, but parties should have the ability to allocate risks of lawsuits in their contracts. There's no public policy against allowing an indemnity to receive indemnity when, even when its counterpart, its contractual counterpart did nothing wrong. You can get indemnity for frivolous lawsuits just like you should get indemnity for valid lawsuits. And so you're saying that's where the circuit court misconstrued the contract because he said that there was a, he needed a triggering event? I agree that there certainly has to be a triggering event. The problem with the court's construction of the contract was the court picked the wrong triggering event. What would be the triggering event in your eyes? The triggering event is, it's not whether the plaintiff's, how the plaintiff's loss was caused. The triggering event is whether the bank takes an action under the resolutions and if that action taken under the resolutions caused the bank to incur fees. That's going to be every time. What was the action that the bank took? It took checks for deposits. Well, then that raises Justice Lampkin's point that that's what banks do and it happens all the time. Well, Your Honor, if the bank does something wrong in a transaction, I will acknowledge that an issue will be presented. I'm not going to take a firm position on how, what would happen in a hypothetical case. But if the bank does something wrong, let's just say that there will be a harder case against the bank under these resolutions because the bank would, because the other side would say, well, you breached the contract yourself. You committed a wrong that led to the incurring of fees. But when the bank doesn't do anything wrong, it shifts, it has the contractual right, it has the right to enter a contract that shifts risks to other parties. That's the first resolution, right? The first resolution in your position is that if we take, Mr. Waller, we're going to have this business arrangement with you, and if we take checks for deposit from you, you have to indemnify us if we incur expenses. Right? And then what's the second resolution? There are two resolutions. One deals with accepting checks for deposit and negotiating checks and receiving the proceeds out of the account in relation to a deposit. So you put money in, take money out. If the bank does that and the bank gets dragged into litigation because of that, then the bank has the indemnity. The other one is the prior endorsement guarantee. You know, I brought up a blow-off of the trial exhibit. This check, this conversion case was on these checks. This is a blow-off of trial exhibit 7. The bank was sued because this signature was alleged to be forged. That was the claim. That resolution number 1 in the account resolution says that Harvey Waller guarantees all prior endorsements. This is a prior endorsement of Harvey Waller on this check. This was the sole reason. This signature was the sole reason that Pamela Henry sued the bank, and he breached that guarantee. What if he had printed her name there? Your bank would have still deposited, wouldn't it? That's what lawyers do. They receive checks named to both the client and the attorney, and the attorney deposits the check into his client trust fund account. Right. You're exactly right, Your Honor. So I'm saying that the fact that it was forged, or the claim that it was forged, why does that – it's inconsequential, isn't it? It's inconsequential for the bank's liability as opposed to the plaintiff, and that's one of the reasons we wanted summary judgment. We had to present evidence to establish that under banking standards of care that was acceptable. However, your scenario is a great example of why we need indemnity clauses like this. If a bank takes a check or deposit to a client trust account without demanding that the client show up with a picture ID, that's a good commercial practice. And the reason it works is because banks will trust lawyers who open IOLTA accounts to act appropriately with regard to their clients. But if the – and that's the lawyer's business. But if a third party goes and sues the bank saying that the lawyer did something wrong, the client may be right, the client may be wrong. But if the bank gets dragged into that litigation, that's the lawyer's business. That's not the bank's business. Well, I think that's the whole point in the indemnity provision, isn't it? I mean, the bank and Mr. Waller are sitting there, and they're going to enter into a commercial relationship, and the bank's going to take the position, well, you know, Mr. Waller is going to decide who he transacts business with, and it just so happens that Mr. Waller picks this guy Olson, and the bank has nothing to do with whether or not they're doing business with Mr. Olson. So it certainly makes sense that the bank would want to protect itself and say, you know what, Mr. Waller, you know what, if you want to do business with us, that's fine, but whoever you choose to do business with, if that person goes awry, it's your problem, not ours. Isn't that what it is? That is the principle, Justice Palmer. That's exactly right. Let me jump off from where Justice Palmer just left off. Accepting that as the current state of Illinois law regarding indemnification, how does Mr. Waller say to the bank, this is a frivolous lawsuit, we don't want you to spend $225,000 defending this lawsuit, and then ask us for that money. How does he avoid, you know, the running, the lawyer's clock running perpetually? Well, aren't you protected from that in the fee hearing, though? Aren't you protected when you go in front of the judge and you say, judge, these are not reasonable necessary fees? Exactly. That is one very important answer. The judge rejected our fee petition as a matter of law. He didn't look at the reasonableness of the fees. The other answer to Justice Garcia's question is that he could have picked up the phone. This case was contested for all of these years. And you know what? It's a lot of fees, but if you divide it out by the number of years, frankly, I think it was a pretty reasonable amount of work. And let me analogize, to pick up on Justice Palmer's point on the underlying purpose of the indemnity. Let me emphasize to this Court that the ruling here from this Court on indemnity and how to construe this indemnity clause has ramifications in other commercial contexts. It's not just this bank form, although this form is important because it is a reasonable assumption to believe that. Let me stop you right there. All right. Because the question I have is, between the two grounds that you're asserting, the contract and the statutory, the UCC, which of the two is the more direct way to reach the conclusion that you want? The resolutions. The contract. The contract. It is. And on indemnity, let me analogize to another very common indemnity situation, if I may. Let's imagine I'm a subcontractor, an electrician. I'm a subcontractor. And a general contractor hires me to put all the outlets in a house. The general contractor puts together the plans and specs and hires me to follow the plans and specs to put the outlets everywhere in the house. Now later, the homeowner says, the outlets are in all the wrong places. And the homeowner goes and sues everybody. Sues the electrician, sues the general contractor, sues an architect or whatever. It is eminently reasonable for me as an electrician to put in my subcontract an indemnity clause saying, if I get sued because of something you, the general contractor, did, you have to indemnify me. This is the banking equivalent of what I just described. That's what this indemnity clause is. Let me... Except you're a subcontractor, there's something wrong. Yeah, let me get to that point. That's exactly my point, that really indemnification covers everything except the bank's own negligence. And so if the bank is responsible for something or other, then they have to cover their own fees. But if they are, if they were blameless, maybe as the electrician, maybe not, indemnification applies regardless of... And that's why I emphasize, Rohner, that it's significant that we had a factual proceeding, a summary judgment proceeding, as to whether or not the bank did anything wrong. The court held in a written ruling, based on the evidence, that the bank exercised ordinary care under banking industry standards. All right. We're going to give you time for rebuttal, unless you want to wrap up. Thank you, Rohner. I'll reserve time for rebuttal. Okay. Good morning. I'll just ask for Harvey Waller. Your Honor, if I had to put this case, compress this case into a single word, I would say the word is attenuation. Did things happen that broke any chain of connection between Mr. Waller's proper use of his IULTA account and the action brought against the bank? And that, Your Honor, is a question of fact. That's why this case went to a trial. That's why the judgment went to fact. Let me stop you right there. Are you saying that under an indemnification agreement between two parties, that the party seeking indemnification from the other must establish what? Liability on the other party's fault before indemnification can happen? Sure. I thought indemnification meant it's absolute. You've got to pay them their expenses, unless you can prove they are at fault. The fact that you're not at fault, that Attorney Waller did everything the way he should have done, is meaningless. Your Honor, the problem isn't that Mr. Waller didn't do anything wrong. So I'm asking you, why should a factual question have anything to do with an indemnification contract between the parties? Indemnification means just that. Because, Your Honor, the finding that the judge made is that the loss suffered by the bank simply had no connection with Mr. Waller's use of the funds. You have to admit that the bank wouldn't have had to pay this rather large amount of attorney's fees if it wasn't for the fact that Mr. Waller brought this business to the bank. Isn't that right? In that sense, yes, Your Honor. Isn't that what the bank is trying to protect itself against, by inserting this indemnity clause into their relationship? Your Honor, the bank made a good point in the beginning when it said that the parties have the ability to allocate the risks among themselves by contract. But what the bank is really asking is for Mr. Waller to become the insurer of the bank against any liability, no matter how remote and no matter how unforeseeable. Exactly. And what's wrong with that? Why can't you contract for that? Why can't the bank just say, you know, Mr. Waller, we'd love to have your business, okay? But if a dispute arises and it's not your fault and it's not our fault, you're paying. And if you don't like that, you can go to the bank down the block. Why can't they do that? I don't think they can, Your Honor, partly because this is an account that Mr. Waller, as an attorney, is obligated to have. He's not obligated to have it at Bank of America. The evidence. If he can go, you know, this is a free market. If he doesn't like the contract that Bank of America has with its depositors, he can take his business elsewhere. But, you know, everyone has a right to contract. And so my question is, if you have a situation, and we all understand that Mr. Waller, well, maybe I shouldn't say that. I mean, the bank would say that Mr. Waller is at fault to the extent that he chose to do business with Mr. Olson. That's a decision that the Bank of America didn't do. The Bank of America is entirely blameless here. And at least you might say Waller, you know, I understand your attenuation point. You might say that Waller, well, you know, with regard to his conduct, there was an intervening criminal act that Mr. Waller didn't have any control over. But Waller picked Olson to do business with. The Bank of America didn't. So when you're allocating the risk, why should the bank have to suffer because Waller decided to do business with a criminal? Because the banking transaction had nothing to do with Henry's loss. It's why. Because Pamela Henry got the money in the sense that, I'm sorry. Go ahead. I didn't mean to interrupt you. In the sense, Pamela Henry got the money. Olson is her agent. When Olson got the money, Pamela Henry got the money. Can you impose these attorney's fees on the bank? If Olson hands Pamela Henry the money, they go to the bank together, they withdraw the cash, and Olson pulls out a pistol and robs her, which is essentially what we've got here. That's why I'm saying this simply happens. Except the ultimate client never touched the money. Had she had possession of the money and then gets robbed by Mr. Olson, that is an intervening act. But she never got the money at all. And so the question is that she's trying to bring in a deep pocket and says, you know, Bank of America or LaSalle Bank was partly responsible for my predicament, and I'm suing them as well. And the contract between Mr. Waller and the bank says indemnification. Why doesn't it apply regardless of who's at fault? Too far afield. Well, does the indemnification contract, does Resolution 1 or Resolution 2 say that in the event the account holder is not responsible for any act sued upon, indemnification doesn't apply? It doesn't say that, Your Honor, any more than the indemnification contracts in the Maxon case that I cited in my brief, which interprets Westinghouse, any more than it applies there. Well, what's the limitation that you want us to say applies to indemnification agreements? What's the limitation, that the one party has to be at fault? No, Your Honor, I think it's a factual question for the court to decide, and that's why I'm saying this is a fact case, not a law case. What rule of law would you say comes out of the circuit court's ruling in this case? Where the loss to the plaintiff, Pamela Henry, comes as the result of an intervening criminal act by her own agent, chosen by herself, not by Waller, breaks the chain of the attenuation clause. Why should that have anything to do between the two parties that are the only ones that are to the indemnification contract? I suppose, Your Honor, because this is, as Mr. Wilson pointed out, this is the kind of foreseeable, inevitable risk of the banking business. This is something that a bank is able to protect against, whether it's by insurance, by its allocation of risk. And by crafting indemnity agreements to protect themselves. That's part of it, Your Honor. It's such a simple allocation of risk. But the result of the indemnification agreement is, instead of having the risk on an institution that can allocate and predict the risk, it imposes an unforeseeable liability, which is like being struck by lightning on a contracting party who cannot reasonably foresee. Let me tell you my problem with Attorney Waller. Attorney Waller wants to treat Mr. Olson as his only client. And yet Mr. Olson is not a lawyer. There's only one lawyer involved in this entire scenario, and that's Mr. Waller. And Mr. Waller certainly knew who the beneficiary of his legal action was going to be, and that was the individual, not the collection agency. And so I think he had an obligation to make sure that she was protected, and I think he fell short of that. Why isn't that accurate? Well, Your Honor, that was simply not litigated between the parties in this case. Why should it be? Vis-a-vis the Bank of America, their hands are totally clean. Mr. Waller has at least made, as Justice Palmer has repeatedly pointed out, that he's the one who entered into this agreement with Mr. Olson, and he was the wrong person to enter into that agreement with. Actually, it's Ms. Henry who's the one who entered into the agreement with Mr. Olson. But that agreement could have been there regardless, and Bank of America wouldn't have been hurt. It wasn't until Mr. Waller came into it, and that's how Bank of America got hurt. Well, Mr. Waller is in this, in that he puts the money into an escrow account and takes it out and gives it to Mr. Olson. She chose Mr. Olson. Was there some sort of agency agreement between Mr. Olson and the female so that Mr. Waller can feel that he's relieved of any responsibility to contact her and he can simply give it to Mr. Olson because here it is in writing, Mr. Olson is Ms. Healy's, if that's her name, agent? There isn't any such thing. Your Honor, this is the... Mr. Waller had an affirmative obligation to make sure that the eventual party that was to benefit from their efforts got the benefit. And if he didn't get the benefit, Bank of America shouldn't be hurt by it. Your Honor, that's not really the question. The question is Bank of America is the problem. I think Your Honor understands my position. All right. Let me just say this, Stan, because I get a sense that the Court has not yet totally persuaded by my position. Well, Mr. Sachs, let me explain where the lack of persuasion is. And it's not just this case. What are we going to do with the next case that comes around or the case where maybe the account holder did do something wrong or do we really want to even encourage Bank of America or the next bank to spend all this money on lawyers when the ultimate outcome is going to be that they're absolved of everything? Your Honor, I'm sorry, Your Honor, I didn't get you. What I want is that Bank of America, which is set up to handle risk, be the one to handle the risk and that the individual attorney who is not set up to handle it, not be in a position of being struck by light. That brings me back to the question I had earlier, and that is that the bank has a right to make a business decision that they are not willing to take that risk. And so what they do when they decide that they are not willing to take that risk is they say to their depositors, here's our indemnity agreement, okay? Take it or leave it. You want to deposit here, this is the deal. So when the appellate courts or when the reviewing courts of this land come out with a decision and we play around with these indemnity agreements, what happens is it's in the indemnity body of law and also in the insurance body of law. What happens is the response to the appellate and the Supreme Court decisions is that the lawyers sit down and they say, well, now we have to redraft our indemnity agreement or we have to redraft our insurance policy. How can we make it any clearer to the courts that we've made a business decision that we are not going to take this risk? Okay? So, I mean, how clear does it have to be? It says right here in the indemnity agreement, claims, any and all claims, expenses, including attorney's fees, that are suffered in connection with basically our business with Waller. So how can they make it any clearer? What would you have the bank say in this indemnity agreement to get them out of this if this isn't enough? I'm sorry to say this, Your Honor, but I don't think the bank can shift this kind of a risk where it comes out of something unforeseeable, where it comes specifically out of an intervening criminal act. That's the underlying point to all this, Mr. Sachs. When you're talking about risk, you're generally talking about what can the party that you want to put that risk on do to avoid that risk. What could Bank of America have done to have avoided this litigation? Other than, as counsel said, have Ms. Helia Henry come in and present identification and show that the money should go to her as well, that sort of thing that simply is unworkable. So let me go back to the original question. What should Bank of America have done to avoid this litigation? What could they have done? Your Honor, the possibility of avoiding, I would say the possibility of avoiding, you can't completely insulate yourself from frivolous litigation. So then once you reach that point, the question is who should bear that risk? And I think Justice Palmer has made it very clear that the parties allocate that risk, and we have to uphold that contract. I think the answer is that this goes beyond a – this kind of an unforeseeable risk goes beyond something you can contract against, and it's the bank that has to insure against it and figure out their costs. In the event that, Your Honors, you send this case, you decide not to uphold the court's decision, I would point out that the reasonableness of the fees remains an issue. There was talk before the circuit court that the fees themselves were reasonable, and that may be true between the attorneys and the bank. The question of what amount of the fees, if any, is reasonable to shift to Mr. Wall remains to be decided. So if the court does not affirm the decision, which I believe it should, the case has to go back to the circuit court for that determination. All right, thank you very much, Mr. Sachs. Mr. Wilson, briefly. Thank you, Your Honor. A few brief points. Counsel said that the underlying transaction had nothing to do with Pamela Henry's loss. In other words, that the banking transaction had nothing to do with Pamela Henry's loss. That was his defense. So in other words, the Epley's argument is that an indemnity has no indemnity for a meritless claim. That's not the law of Illinois. Another argument that counsel made was that the bank simply cannot shift liability. So a bank cannot shift liability in a situation? That is an argument that indemnity is against public policy, not the law of Illinois. Bank of America is not set up to handle risk. Bank of America is set up to handle banking. Insurance companies are set up to handle risk. Counsel made an argument about how if the court reverses, it should send the case back for a hearing on the reasonableness of the fees. My problem with that is that we've already had a trial on this. We submitted, we compiled all the fee bills, we submitted them into evidence, we had a witness to support those fee bills. Counsel called no expert witness. Counsel didn't even call. Did the circuit court judge ever reach that question, though? The reasonableness of the fees because I thought he said indemnification doesn't apply. He did say that. He didn't say in the event that it does apply, I find the fees reasonable? Fair enough. But my point here is that there was a whole trial proceeding where we submitted evidence about fees, the other side did not submit any counter evidence. It was like a directive verdict. It was. And you end up on the short end. Right. All right. Your Honor. I assume that if you wind up going back there. You'll get those fees, too. Well, that's true. But I assume that if you go back there, you're going to argue in front of the trial court that this is what rates you to cot on the fees or the law of the case. You'll make that argument in front of the trial court if you're there. We wouldn't make that argument, Your Honor. I would like to make a quick point about the statutory construction issue if Your Honors are. The problem we like to, it's certainly your call, but, you know, addressing every possible way to deal with an issue makes it less clear than maybe it should be. Fair enough, Your Honor. I will close with this last point simply to say that with regard to the statutory issue, the statute says there's a warranty that signatures are authentic and authorized. The parties stipulated that the signatures were inauthentic. Okay. And we rely on our brief for the balance of the argument. Thank you, Your Honor. All right. Thank you. The case will be taken under advisement. We're going to wait until.